IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT ) | |
| OPPORTUNITY COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:19-CV-657-WKW |
| ) | [WO] |
| ALLSTATE BEVERAGE ) | |
| COMPANY, LLC, ) | |
| ) | |
| Defendant. ) | |

## ORDER ON PRETRIAL HEARING

A pretrial hearing was held on October 12, 2022, wherein the following proceedings were held and actions taken:

**1.    PARTIES AND TRIAL COUNSEL**:

For Plaintiff, Equal Employment Opportunity Commission ("Plaintiff" or the "EEOC"):  George Hayek, Austin Russell, and Gerald Miller.

For Defendant Allstate Beverage Company ("Defendant" or "Allstate"): T. Matthew Miller, Anne Knox Averitt, Cortlin Bond, and Charles Stewart.

**2.    JURISDICTION AND VENUE:**

Subject matter jurisdiction is proper under 28 U.S.C. § 1331.  The parties do not contest personal jurisdiction or venue.

3. **PLEADINGS:** The following pleadings and amendments were allowed:

a. Plaintiff's Complaint (Doc. # 2); and

b. Defendant's Answer (Doc. # 10)

4. **CONTENTIONS OF THE PARTIES:**

(a) **The EEOC:**

1. From approximately March 2018 through July 2018, Defendant engaged in unlawful employment practices at its Montgomery, Alabama facility by terminating Freeman from his employment on the basis of disability, in violation of Sections 102(a) of Title I of the ADA, 42 U.S.C. §§ 12112(a).

2. Defendant regarded Freeman as disabled. Defendant refused to allow him to return to work in May 2018, refused his request for additional leave, and chose to terminate him on the basis of his perceived disability.

3. Freeman is a qualified individual who could perform the essential functions of his position without an accommodation. Freeman had successfully completed the requirements of his position since he started working for Defendant in 2011. He could perform the essential functions of his position without an accommodation at the time Defendant refused to allow him to return to work in May 2018, refused his request for additional leave, and terminated him.

4.     Manually lifting 40 or more pounds without assistance and pushing or pulling fully loaded carts without assistance were not essential functions of Freeman's position. But even if they were, Freeman could have performed them without any accommodations as of May 2018.

5.     Before suffering from a pulmonary embolism, Freeman had received assistance from coworkers with lifting and transferring heavier items while working for Defendant. Despite this, Defendant disallowed Freeman to return to work under the same conditions he had enjoyed before suffering the embolism.

6.     Defendant terminated Freeman because of his perceived disability.

7.     Just before his termination, Freeman requested additional leave to meet with his physician regarding his limitations, but Defendant denied his request and chose to terminate him instead.

8.     Defendant's actions deprived Freeman of equal employment opportunities and have otherwise adversely affected his status as an employee because of his disability.

9.     Freeman has suffered pecuniary and non-pecuniary damages because of Defendant's discriminatory actions.

10.    Defendant's unlawful employment practices were intentional or otherwise done with malice or reckless indifference to the federally protected rights of Freeman.

11. Defendant did not terminate Freeman for a legitimate, non-discriminatory reason.

12. Freeman exercised reasonable diligence to secure substantially equivalent employment after Defendant terminated him.

13. Defendant's discrimination against Freeman caused him to suffer depression, which prevented him from obtaining new employment.

    **(b)**     **Allstate:**

1. Allstate did not violate the Americans with Disabilities Act (ADA) as alleged by Plaintiff in this lawsuit.

2. Plaintiff cannot establish that Mr. Freeman was a qualified individual with a disability under the ADA.

3. Plaintiff cannot establish that Allstate perceived or regarded Mr. Freeman as having a disability.

4. Plaintiff cannot establish that Mr. Freeman could perform certain job responsibilities, including but not limited to "essential functions," of the Point of Sale Warehouse Administrator position, given the physical restrictions from his physician.

5. Allstate had a legitimate, non-discriminatory reason for ending Mr. Freeman's employment.

6. Allstate's decisions at issue were job-related and consistent with business necessity.

7. Plaintiff has not established that Allstate terminated Mr. Freeman's employment because of intentional discrimination under the ADA.

8. Allstate acted in good faith, and the EEOC cannot establish any malice or reckless disregard on Allstate's part. Allstate committed no act or omission with the intent to cause harm, injury, or other damage to Freeman.

9. Allstate denies that unlawful discrimination was a factor in any of the decisions at issue and denies that it unlawfully discriminated against Freeman. However, to the extent the jury concludes that alleged disability influenced any decision by Allstate impacting Freeman, Allstate would have made the same decision for legitimate, non-discriminatory reasons.

10. The EEOC and Freeman are not entitled to some or all of the relief requested in the EEOC's Complaint because even if Allstate were found to have considered alleged disability in any decisions or actions with respect to Freeman, which Allstate denies, no such decisions were motivated by Freeman's alleged disability. Further, the EEOC cannot prove that Freeman's alleged disability was the "but for" reason for an alleged adverse employment action. *See Gross v. FBL Fin. Serv., Inc.*, 129 S. Ct. 2343 (2009). Allstate's challenged actions were based on reasonable factors other than disability.

11. Plaintiff has not established that Mr. Freeman engaged in reasonable efforts to mitigate any alleged damages given his failure to reasonably seek other employment, his statements of total disability and abilities to the U.S. Social Security Administration and his rejection of an opportunity to reapply for the position he previously performed at Allstate. Any recovery for damages is limited to the extent that Freeman has failed or refused to mitigate his damages. Likewise, these claims are limited to the extent that Freeman has been, or is, physically or otherwise unable or unwilling to work.

12. Plaintiff is estopped from establishing that Mr. Freeman was a qualified individual with a disability given Mr. Freeman's filings with the U.S. Social Security Administration seeking disability payments.

13. Plaintiff is precluded from establishing that Mr. Freeman was a qualified individual with a disability given Mr. Freeman's prior statements to the U.S. Social Security Administration regarding his ability to work and his restrictions and limitations.

14. Plaintiff is precluded from establishing that Mr. Freeman was regarded as an individual with a disability because any alleged impairment was transitory and minor.

15. Plaintiff is precluded from proceeding on a "regarded as" claim under the ADA because it was not pleaded in Plaintiff's Complaint, Rule 26 report, or in any other pleading prior to the summary judgment opposition brief (Doc. 51).

16. Plaintiff's claims are subject to the damage caps under 42 U.S.C. § 1981a. Allstate had fewer than 200 employees during the applicable time periods and thus any claims for compensatory and punitive damages, if recoverable, are capped at $100,000.

17. The EEOC cannot recover punitive damages against Allstate for its claims and cannot prove facts sufficient to support such an award under applicable law. Allstate hereby pleads all defenses made available by the United States Supreme Court's decision in *Kolstad v. American Dental Association*, as well as all other statutory, precedential and constitutional principles and limitations relating to punitive damages.

18. The EEOC's claims are barred or limited to the extent it seeks remedies beyond those that it or Freeman would be entitled to receive under the statutory provisions at issue.

19. Plaintiff, as an arm of the United States government, cannot recover attorney fees if it prevails in this action. 42 U.S.C. § 12205. [Section 505] (In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a

reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.)

20.     Allstate acted in good faith.

21.     To the extent Plaintiff attempts to argue that Mr. Freeman was entitled to an accommodation, Allstate objects based on the Court's summary judgment order.

## 5.     STIPULATIONS BY AND BETWEEN THE PARTIES:

1.     The Parties stipulate to the jurisdiction of and venue in this Court.

2.     The Parties stipulate that Jimmy Freeman was an employee of Allstate Beverage from 2011 until June 22, 2018, when Allstate terminated his employment. He worked in the position of Point of Sale Administrator at the Montgomery, Alabama Allstate Beverage warehouse in 2018.

3.     The Parties stipulate that the EEOC has exhausted administrative remedies required as a precondition to suit.

4.     The Parties stipulate that Allstate Beverage had over 100, but fewer than 200, employees during the applicable time periods.

5.     The Parties stipulate that in March of 2018, Mr. Freeman was hospitalized for a few days.

6.     The Parties stipulate that on or around April 27, 2018, Allstate notified Mr. Freeman, reminding him that he would be required to provide a fitness for duty certification from his physician to return to work.

7.     The Parties stipulate that on May 2, 2018, Mr. Freeman's physician completed and submitted a fitness for duty certification with enumerated restrictions.

8.     The Parties stipulate that Allstate provided Mr. Freeman with approximately 16 weeks of unpaid leave.

9.     The Parties stipulate that Mr. Freeman filed for Social Security disability insurance after being terminated but was ultimately denied.

10.    The Parties stipulate that on August 19, 2019, Susan Ames called Mr. Freeman to let him know that the position he previously held with Allstate Beverage Company, the POS Administrator Position in Montgomery, was open and Allstate offered him the opportunity to apply. Mr. Freeman told Ms. Ames "No."

   6.   The jury selection and trial, which is to last 3 days, is set for **February 6, 2023, at 9:30 a.m., in the Frank M. Johnson, Jr. U.S. Courthouse Complex, One Church Street, Courtroom 2-B, Montgomery, Alabama.**

   7.   A status conference is set for **February 1, 2023, at 10:00 a.m., in the Frank M. Johnson, Jr. U.S. Courthouse Complex, One Church Street, Courtroom 2-B, Montgomery, Alabama.**

   8.   If there is more than one case to be tried, a trial docket will be mailed to counsel for each party approximately one week prior to the start of the trial term.

   9.   The parties shall file any requested voir dire questions, motions *in limine* fully briefed, and proposed jury instructions and proposed verdict forms with

9

legal citations, on or before **January 23, 2023**. The opposing party is DIRECTED to file a response to any motion *in limine* on or before **January 30, 2023**.

10. The parties are not required to file trial briefs, but if they choose to do so, the briefs shall be filed on or before **January 30, 2023**.

11. The parties shall jointly prepare and submit to chambers on or before **January 30, 2023**, three identical three-ringed binders, each containing one copy of pre-marked exhibits. The binder shall contain joint exhibits (*i.e.*, those exhibits that are relevant, not subject to objections, and certain to be introduced at trial); Exhibits of Plaintiff that may be used, or that are or may be contested, denominated and numbered as Plaintiff's Exhibits; Exhibits of Defendant that may be used, or that are or may be contested, denominated and numbered as Defendant's Exhibits. On the same date, the parties shall submit to chambers three copies of the jointly prepared exhibit list, which shall delineate all objections to exhibits and responses to objections. The parties shall direct questions about this procedure to the law clerk assigned to the case.

12. The parties shall review and comply with the Middle District of Alabama's Order on the E-Government Act, particularly with regard to redactions.

13. All deadlines not otherwise affected by this order will remain as set forth in the Uniform Scheduling Order.

14. The parties have indicated that there are no other disputes at this time.

All understandings, agreements, deadlines, and stipulations contained in this Order shall be binding on all parties unless modified by the court. Any objections or suggested corrections to this Order shall be filed no later than seven calendar days from the below date, after which this Order becomes final.

DONE this 8th day of November, 2022.

                                              /s/ W. Keith Watkins
                                    UNITED STATES DISTRICT JUDGE