## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Civil Action No.: 2:19-cv-00657-WKW** |
| **ALLSTATE BEVERAGE COMPANY, LLC,** | ) ) ) | |
| **Defendant.** | ) | |

## <u>DEFENDANT'S RULE 59 MOTION TO ALTER, AMEND, OR VACATE</u>

Defendant Allstate Beverage Company ("Allstate" or the "Company") hereby submits this Rule 59 Motion to alter or amend, in part, the Court's Memorandum Opinion (Doc. 77) and associated Order (Doc. 69). In support of this Motion, Allstate states as follows:

## STANDARD OF REVIEW

Under Rule 59(e) of the Federal Rules of Civil Procedure, a district court may "alter or amend a judgment." Fed. R. Civ. P. 59(e). Rule 59 motions may be granted upon showing (1) "newly-discovered evidence," *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999); (2) "manifest errors of law or fact," *id*.; (3) "manifest injustice," *Jenkins v. BellSouth Corp.*, No. 2:02-CV-1057-VEH, 2007 WL 9711638, at *1 (N.D. Ala. Mar. 5, 2007); or (4) "an intervening change in controlling law," *Beepot v. JP Morgan Chase Nat. Corp. Servs., Inc.*, 628 F. App'x 1008, 1009 (11th Cir.

1

2015). The decision to alter or amend judgment is left to the sound discretion of the district judge. *Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985).

## ARGUMENT

Allstate respectfully requests that this Court reconsider and amend the Memorandum Opinion (Doc. 77) and Order (Doc. 69) relating to Allstate's Motion for Summary Judgment based on manifest errors of law. On October 17, 2022, the Court issued its Memorandum Opinion setting forth the reasons for its order granting Allstate's summary judgment motion on all claims except the EEOC's "Regarded As" discrimination claim. (Docs. 69, 77). Allstate submits that based on applicable case law and the undisputed record, the Court's decision to allow the "Regarded As" claim to proceed past summary judgment was clear error. First, the EEOC failed to properly plead a "Regarded As" claim in its Complaint, as required by operative Eleventh Circuit case law. Second, even if the EEOC had properly pleaded such a claim, summary judgment is due on that claim because the Company offered legitimate reasons for Mr. Freeman's termination and the EEOC failed to establish pretext, regardless of whether the job responsibilities Mr. Freeman could not perform at the time of his termination were "essential functions" of the position.

For the reasons more fully set forth below, Allstate respectfully requests the Court amend its Order (Doc. 69) and supporting Memorandum (Doc. 77) to grant summary judgment on all counts.

### a. The Court's Conclusion That the EEOC Properly Pleaded A "Regarded As" Discrimination Claim Contravenes Eleventh Circuit Precedent.

In its Memorandum Opinion, the Court acknowledged that "the Complaint does not specify under which of the three subparts of the ADA's definition of disability the claim is proceeding." (*Id.* at pp. 22–23). The Court rejected Allstate's argument, however, that the EEOC did not plead a "Regarded As" discrimination claim (*Id.* at p. 23) noting that "[a]bsent authority or persuasive argument on this point, [it] declines to summarily dispose of the regarded-as theory." (*Id.* at p. 22). In reaching its holding, however, the Court relied on pre-ADAAA caselaw from other jurisdictions rather than the operative Eleventh Circuit precedent.

Specifically, the Court relied on *Kolovos v. Sheahan*, No. 97C4542, 1999 WL 1101919 (N.D. Ill. Nov. 30, 1999). *Kolovos* is not binding in this Circuit, and when it was decided, there was a division in the Courts as to the pleading standards for discrimination claims. *See Everist v. Blue Cross & Blue Shield,* No. 98-4041-RDR, 2000 WL 1708504, at *6 (D. Kan. Oct. 20, 2000) (discussing the division in authority on the pleading standard at the time *Kolovos* was decided). *Kolovos* emerged before *Swierkiewicz v. Sorema,* 534 U.S. 506 (2002), shed light on the

3

appropriate pleading standards in discrimination claims, and before *Twombly* and *Iqbal*'s plausibility standard emphasized that a Complaint must allege facts that *show* entitlement to relief. Accordingly, this Court's reliance on *Kolovos* was improper.  Instead, a more recent Eleventh Circuit opinion, *Andrews v. City of Hartford*, applies here.  700 F. App'x 924 (11th Cir. 2017).

In *Andrews v. City of Hartford*, a post-ADA Amendments Act case, the Eleventh Circuit held that "[t]o state a 'regarded as' disability claim under the ADA, a plaintiff must allege, among other things, that he was 'regarded as' disabled, he was a qualified individual, and that a 'covered entity' discriminated against him 'on account of' his disability." 700 F. App'x at 926 (citing 42 U.S.C. § 12102(1)). The Court observed this immediately after reciting the three disability definitions (and bases for disability claims) under the ADA. *Id.* The Court affirmed the dismissal of Andrews's "Regarded As" disability claim because he never alleged "any plausible facts" showing how he was "regarded as" disabled and, instead, "made only the conclusory statement that he was fired because of his disability, which was not sufficient to state a [Regarded As] discrimination claim." *Id.* at 927.

The *Andrews* opinion made clear that under the *Twombly-Iqbal* pleading standard, a plaintiff must allege sufficient facts to allow the reasonable inference that an employer engaged in discrimination. *Id.* The complaint must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.*

Following the *Andrews* opinion, district courts in the Eleventh Circuit have required that a "Regarded As" claim be specifically pleaded in the complaint in order to meet the *Twombly* and *Iqbal* standard to give proper notice to the defendant. Generally alleging the plaintiff is disabled, as the EEOC did here, has been deemed insufficient. *See, e.g., Perry v. Don Park USA Ltd. P'ship*, No. 120-CV-03070-JPB-RGV, 2021 WL 3399822, at *8 (N.D. Ga. Apr. 28, 2021) (dismissing case because plaintiff failed to allege, in part, how "being 'regarded as' having a disability was a 'determinative factor' in the termination decision."); *Jones v. Silver Line Bldg. Prod. LLC*, No. 1:20-CV-2042-LMM-JKL, 2020 WL 10183992, at *3 (N.D. Ga. Oct. 9, 2020), *report and recommendation adopted*, 2020 WL 10184047 (N.D. Ga. Oct. 28, 2020) (observing that the complaint's allegations only puts forth a claim based on an "actual physical impairment").

Here, the EEOC's Complaint failed to provide notice that it was asserting discrimination based upon the "Regarded As" theory of disability. The Complaint does not expressly allege that Allstate regarded or perceived Freeman as disabled and discriminated against him on that basis. Neither "regarded as," "perceived as," nor any similar language is present in the Complaint whatsoever. Nor did the EEOC amend its Complaint any point to assert such a claim, despite ample opportunity to do so.

5

Moreover, a claim that Mr. Freeman was "Regarded As" disabled and discriminated against on that basis cannot be inferred from the EEOC's Complaint. The Complaint expressly asserts discrimination on the basis of an actual disability, which would require a reasonable accommodation, not a perceived disability. (*See* Doc. 2). The entire thrust of the Complaint outlines a claim that Mr. Freeman was actually disabled, that Allstate failed to provide a reasonable accommodation, and that such failure resulted in Mr. Freeman's termination. For example, the Complaint asserts that Allstate "failed to provide Freeman with reasonable accommodation of his disability and terminated him from his employment on the basis of his disability." (Doc. 2, ¶ 12 (emphasis added)). The Complaint argues that Freeman's condition resulted in his inability to complete tasks which Allstate believed were essential (See, e.g., Doc. 2 ¶¶ 16, 20, 23) and that "Defendant terminated Freeman *rather than reasonably accommodating him*, in violation of Sections 102(a) and 102(b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5)(A)." (emphasis added). These sections of the ADA cited by the EEOC in the Complaint further show that the EEOC was alleging a disability that requires an accommodation. Section 12112(a) contains general language prohibiting discrimination and 12112(b)(5)(A) specifies a failure to accommodate claim.[1] Given that a reasonable accommodation claim requires an

---

[1] "(5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such

6

actual disability, *see* 42 U.S.C. § 12201(h), the Complaint points to a single theory of relief—that Mr. Freeman was actually disabled, and Allstate failed to accommodate him in lieu of terminating his employment when his medical leave expired. (*See* Doc. 2). Further, the EEOC did not assert any facts alleging that Allstate believed Freeman's condition might last longer than six months, a requirement for a "Regarded As" claim. *See Saville v. Adday, Inc,* No. 3:21-CV-11-CAR, 2021 WL 5414293, at *2–3 (M.D. Ga. May 18, 2021) (observing that the complaint must allege facts that defendant perceived plaintiff as having symptoms lasting longer than six months).

Because the EEOC did not plead a "Regarded As" claim as set forth in *Andrews*, and only first raised the claim in response to Allstate's Motion for Summary Judgment, Allstate did not have fair notice of such claim. (*See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.") (citation omitted)).

For these reasons, the Court should grant Allstate's motion to amend, and alter its opinion to grant Allstate's Motion for Summary Judgment in full.

---

covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."

> **b.  In Evaluating the "Regarded As" Claim, the Court Improperly Considered "Essential Functions" at the Legitimate, Nondiscriminatory Reason and Pretext Stage.**

Even if the EEOC had properly pleaded a "Regarded As" claim, which it did not, this claim would fail as a matter of law because Allstate identified legitimate, nondiscriminatory reasons that it terminated Mr. Freeman's employment, and the EEOC failed to establish pretext. In its Memorandum Opinion, the Court erroneously applied the "Essential Functions" inquiry to evaluate Allstate's legitimate, nondiscriminatory reason for termination.

A plaintiff with only circumstantial evidence of disability discrimination must proceed under the familiar *McDonnell Douglas* burden-shifting framework to prove his claim. *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1215 (11th Cir. 2021). The Court found that there was a question of fact as to whether lifting over 40 pounds and pushing and pulling loaded and unloaded carts were essential functions of Mr. Freeman's position, and thus found a question of fact as to whether the EEOC could meet its burden to establish that Freeman was "qualified" as required to make a *prima facie* case.

Finding a question of fact as to whether the EEOC could establish a *prima facie* case, the Court then shifted the burden to Allstate to state a legitimate, non-discriminatory reason for Freeman's termination. *See id.* at 1217. Allstate showed that it terminated Mr. Freeman because the Company believed that he could not

perform his job duties given the restrictions placed by his physician. (*See* Doc. 77, p. 5). It is undisputed that Mr. Freeman's physician advised Allstate that he restricted Freeman from lifting over 40 pounds and pushing and pulling loaded carts unless he had assistance in doing so. (Doc. 77, p. 4). And it is undisputed that those restrictions remained in place as of the date of Mr. Freeman's termination. (*See* Doc. 77, p. 5). As noted in the Court's Opinion, Mr. Freeman testified he was required to perform these restricted job duties approximately 15 times each day. (Doc. 77, p. 26). As also noted in the Opinion, the EEOC does not dispute that this is the reason articulated by Allstate: "Relying on Allstate's June 19, 2018 letter to Mr. Freeman, the EEOC argues that Allstate's "express, written reason for terminating Freeman was his physician-imposed restrictions, which themselves were the product of Freeman's disability. (Doc. # 51 at 59; *see also* Doc. # 52-38 (letter).)" (Doc. 77, p. 34).

It is at this point in the analysis that the Court erred as a matter of law in its Memorandum Opinion by requiring that Allstate's legitimate, nondiscriminatory reasons relate to an "essential function" of Freeman's job. The Court held:

> An employer has a legitimate, non-discriminatory reason for terminating a disabled employee who can no longer perform the essential functions of his job. *See E.E.O.C. v. Eckerd Corp.*, No. 1:10-CV-2816-JEC, 2012 WL 2726766, at *11 (N.D. Ga. July 9, 2012). **However, because there is a genuine dispute of material fact whether Mr. Freeman's restrictions were essential functions of his job, the legitimacy of the proffered reason is for trial, and the *McDonnell Douglas* analysis comes to a close.** (Doc. 37, p. 36) (emphasis added).

9

This is not the correct analysis for a "Regarded As" discrimination claim. To establish a *prima facie* case under the ADA, a Plaintiff must show that he is a "qualified" individual with a disability. This requires a showing that he can perform the "essential functions" of the job either with or without an accommodation. *See, e.g., Todd*, 998 F.3d at 1215–16 (discrimination claim); *Kintz v. United Parcel Serv., Inc.*, 766 F. Supp. 2d 1245, 1254 (M.D. Ala. 2011) (reasonable accommodation claim). "Essential functions" are a defined term under the ADA which is tied directly to the definition of a "qualified individual." 42 U.S.C. § 12111 (8) ("The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the *essential functions* of the employment position that such individual holds or desires." (emphasis added)). Essential functions are distinguished from marginal functions in that they are "fundamental job duties of the employment position." 29 C.F.R. § 1630.2 (n).

The distinction between essential functions and marginal functions exist only to identify which functions of a job an ADA plaintiff *must* be able to perform with or without a reasonable accommodation. *See Holly v. Clairson Indus., L.L.C.,* 492 F.3d 1247, 1256 (11th Cir. 2007) ("[A]n ADA plaintiff must show either that he can perform the essential functions of his job without accommodation, or, failing that, . . . that he can perform the essential functions of his job with a reasonable accommodation." (citation omitted)). The essential versus marginal distinction helps

determine what functions must be discarded completely as an accommodation if an employee is actually disabled and which functions the plaintiff must be able to do if given a reasonable accommodation. *See id.* at 1256–57. As such, identifying "essential functions" is used only to determine if the plaintiff is a "qualified individual" and whether a reasonable accommodation is necessary—the inquiry into whether an individual meets the baseline "qualified" requirement ends after a *prima facie* case is established.

The Court incorrectly inquired into whether the tasks Mr. Freeman was expected to accomplish, and was restricted from performing, were "essential functions" under 29 C.F.R. § 1630.2 (n) past the *prima facie* stage. In so doing, the Court effectively ended its analysis when it found that the Plaintiff might be able to make a *prima facie* case at trial. A Plaintiff cannot survive summary judgment based on the elements of a *prima facie* case, however, if an employer articulates a legitimate, non-discriminatory reason for its actions. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (setting forth the burden-shifting analysis).

It is well established that an employer is free to take an adverse action for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015) (internal quotations and citation omitted). If, when making an employment decision, an employer relies on

restrictions from a doctor that effect the employee's ability to perform job duties, the employer cannot be said to be basing its decision on an "illegitimate factor" by considering the doctor's restrictions, even if the employee's condition or perceived condition caused the restrictions.

The ultimate question is whether an employer discriminated for an illegal reason, be it race, or disability, or another protected characteristic. An employer's consideration of the effect of a doctor's restriction on an employee's ability to lift would certainly be a legitimate reason in a race discrimination case and the outcome should be no different here. *i.e.*, the reason was not a perceived disability but the restrictions from the doctor. To find otherwise would be to hold that reliance on doctor's restrictions in a perceived disability case is akin to considering the effect of an employee's race on his ability to do the job in a race discrimination case. One is a legitimate reason and the other is not. *See, e.g., Rakity v. Dillon Companies, Inc.*, 302 F.3d 1152, 1165 (10th Cir. 2002) ("The *McDonnell Douglas* framework was designed to address the difficulties of proving the existence of discrimination, not the existence of a disability or perceived disability. The framework is [] necessary where a defendant claims the adverse employment action was made for reasons other than the plaintiff's membership in a protected class.").[2]

_____

[2]This is not the situation intended for protection by the perceived disability provision of the ADA – e.g., where there are no restrictions from a doctor, but an employer refuses to allow an employee to return based strictly on its perception that the employee has an impairment.

As stated in the Court's Opinion, an employee is "regarded as" disabled if the employee is regarded as having an impairment, even if the impairment does not substantially affect a major life activity. (Doc. 77, p. 19). As such, almost every employee who cannot return to work after exhausting FMLA leave could be "regarded as" disabled. Under the standard applied by the Court, an employer could not terminate an employee who at the conclusion of FMLA medical leave has work restrictions from his doctor, unless the employer can prove that the restrictions prevent the employee from performing an "essential function" of the job, even if the employee is not entitled to accommodations for his restrictions (including eliminating non-essential job duties) as a matter of law. This standard conflicts with the established burden shifting standard under which an employer must only show a "legitimate reason" for termination.

Under the *McDonnell-Douglas* burden shifting standard, Allstate offered a legitimate reason for Mr. Freeman's termination, and the EEOC failed to establish pretext—regardless of the position's essential functions. Allstate has a legitimate interest in employing a POS Warehouse Administrator capable of lifting/pushing 40 pounds and cleared by his doctor to do so, especially where such task is beneficial to the job. *See, e.g., Larson v. Rush Fitness Complex*, No. 3:13-cv-73-TAV-HBG, 2014 WL 6090323 (E.D. Tenn. Nov. 13, 2014) (in "regarded as" claim, court found legitimate reason for termination where employer did not permit employee to return

following FMLA leave because the doctor had not cleared the employee as *able* to return). Moreover, Allstate can legitimately rely on Mr. Freeman's lifting restrictions even if they derive from actual physical impairments, and even if it "perceives" him as being disabled. *See, e.g., Todd,* 998 F.3d at 1217–18 (summary judgment affirmed where employer did not renew contract because employee made threats, even though those threats were derivative of an actual and perceived mental impairment).

Given that Allstate established a legitimate reason for its decision to terminate Mr. Freeman's employment, the Court should have shifted the burden to the EEOC to establish pretext by showing "weaknesses, implausibilities, inconsistencies, incoherencies[,] or contradictions" such that a reasonable factfinder might find the reason "unworthy of credence." *Connelly v. WellStar Health Sys., Inc.*, 758 F. App'x 825, 829 (11th Cir. 2019). Typically, this requires evidence that either (1) "the proffered reason is not worthy of belief," or (2) "that discrimination was, in fact, [the] real reason." *Scott v. Shoe Show, Inc.*, 38 F. Supp. 3d 1343, 1362–63 (N.D. Ga. 2014).

The Court did not point to any evidence in the record showing that (1) Freeman's restrictions were not the true reason for termination, or (2) that discrimination more likely motivated Allstate. In fact, as recognized in the Court's opinion, the EEOC has admitted that the restrictions *were the reason* for termination

14

and the Court's opinion implicitly recognized that the true reason for termination was Freeman's inability to accomplish certain tasks, but withheld summary judgment because it found a question of fact about whether those duties were "essential." (Doc. 77, pp. 36–37). Likewise, the EEOC put forth no argument or evidence of pretext when it was required to rebut Allstate's legitimate, nondiscriminatory reason except to contend that Mr. Freeman's restricted duties were not "essential" job functions. (*See* Doc. 51). The Court's Opinion acknowledges this very point:

> Mr. Freeman estimated that he would push a loaded cart "maybe ten" times a day (Doc. # 45-1 at 133–34) and that he lifted items weighing forty to fifty pounds approximately "five times per day." (Doc. # 45-1 at 131; see also Doc. # 45-3 at 72–73.) If this were the only evidence regarding the functions of Mr. Freeman's job, Allstate's motion might prevail. However, as the EEOC points out, there is conflicting evidence about which functions of the POS warehouse administrator job are essential. (Doc. 77, pp. 25-26).[3]

There is no dispute of fact that Mr. Freeman was terminated because his physician-imposed restrictions kept him from performing certain job responsibilities. Because the EEOC has not, and cannot, show that Allstate's

---

[3]At the "legitimate reason" stage of the analysis, Allstate's proffered reason need not be found to be accurate to be legitimate, so long as it reasonably believed its reason to be accurate. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (at the legitimate, nondiscriminatory reason and pretext stage, the Court should look only to the employer's beliefs about the situation, not what is later proven to actually be true). As such, even if Allstate could only terminate Mr. Freeman for inability to perform an essential job duty, its reason is legitimate because it believed, as shown by its written essential functions documentation, correspondence, and testimony, that the job duties at issue were essential. If it turns out, based on a legal analysis under the ADA, that such duties were not essential, this does not make Allstate's reason illegitimate.

articulated reason for terminating Mr. Freeman based on those restrictions is pretext for intentional disability discrimination, summary judgment should have been issued in Allstate's favor on any "Regarded As" claim. Thus, the Court should amend its judgment and grant Allstate's Motion for Summary Judgment in its entirety.

## CONCLUSION

As set forth above, the EEOC failed to properly plead a "Regarded As" discrimination claim and should not have been able to raise one at the summary judgment stage. Even if it had, however, summary judgment remained appropriate on the "Regarded As" claim because the EEOC failed to establish pretext as to the Company's proffered reason for terminating Mr. Freeman's employment, that his restrictions precluded him from performing certain job responsibilities. Whether those responsibilities were "essential functions" is inconsequential for purposes of this claim. Summary judgment is due on all counts in Allstate's favor. Accordingly, Allstate respectfully requests that this Court reconsider and amend its Memorandum Opinion (Doc. 77) and Order (Doc. 69) to correct manifest errors of law, and grant Allstate's Motion for Summary Judgment in its entirety.

Respectfully submitted,


/s/ T. Matthew Miller
T. Matthew Miller (ASB-2129-I66T)
Anne Knox Averitt (ASB-2668-N76M)
Cortlin L. Bond (ASB-6096-X12M)
Sarahanne Y. Vaughan (ASB-1515-Q08B)
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone: (205) 521-8000
Email: mmiller@bradley.com
Email: aaveritt@bradley.com
Email: cbond@bradley.com
Email: svaughan@bradley.com

Charles A. Stewart III (ASB-4955-A56C)
Bradley Arant Boult Cummings LLP
445 Dexter Avenue, Ste 9075
Montgomery, AL 36104
Telephone: (334) 956-7700
Email: cstewart@bradley.com
*Attorneys for Defendant*
*Allstate Beverage Company, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> George Hayek, Esq.
> Gerald Lee Miller, Esq.
> Austin Russell, Esq.
> Equal Employment Opportunity Commission
> Birmingham District Office
> Ridge Park Place, Ste 2000
> 1130 22nd Street South
> Birmingham, AL 35205
> george.hayek@eeoc.gov
> gerald.miller@eeoc.gov
> austin.russell@eeoc.gov

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

> None.

> _/s/ T. Matthew Miller_
> OF COUNSEL